## A. MASSEY *v*. THE STATE.

1. THEFT—EVIDENCE.—On a trial for theft of a gelding the state proved that, subsequent to the theft, the animal was sold by accused to a witness,

from whom the owner subsequently made reclamation; whereupon the witness informed the accused of the claim thus set up to the animal, and a part of the conversation which then ensued between the witness and the accused was elicited by the state. *Held,* that the accused was entitled, on the cross-examination, to have the witness state the remainder of the conversation.

2. EVIDENCE—BILL OF EXCEPTIONS.—In reserving exceptions to the exclusion of the explanation given by the accused of his possession of the stolen property, the bill of exceptions should show what the explanation was, so that its relevancy and materiality could be considered.

3. EVIDENCE.—On a trial for theft of a branded animal a witness for the defense swore he saw the accused trade for the animal with one O., and accused offered certificates of the county court showing that O. and two other persons in the county had recorded the brand as theirs. *Held,* that it was error to exclude the certificates from the jury on objection by the state.

4. REASONABLE DOUBT may not only arise out of the evidence, but may be the result of a want of evidence. On this subject instructions to juries should follow the statute (Pasc. Dig., Art. 3105), without further explanation.

5. CHARGE ON WEIGHT OF EVIDENCE.—The court below instructed the jury, in effect, that if the accused stated that he got the stolen property from one person, and the proof showed that he got it from a different one, it was a suspicious circumstance which the jury might consider of. *Held,* to be a charge on the weight of evidence. Great caution should be exercised in framing instructions to juries, so as to avoid charging on the weight of the evidence.

APPEAL from the District Court of McLennan. Tried below before the Hon. X. B. SAUNDERS.

The opinion of this court discloses the material facts.

*John C. West,* for the appellant. We insist that the fact that three different persons had recorded and used the T 4 brand, and especially the fact that Westley Orgen was one of them, was material to the defendant, it being shown by the proof, uncontradicted and unimpeached, that defendant bought the horse from Orgen, and paid for him, and it being admitted by the state that the T 4 brand was plainly discernible on the animal described in the indictment, and not a scintilla of evidence being tendered to show that the

defendant placed it there. The reasoning by which this testimony was excluded is so latent as to be incomprehensible and inconceivable. We shall not discuss it.

The first charge asked by the defendant was: "If the testimony shows that one of two persons stole the horse, but does not show clearly who was the taker, neither of them can be convicted." Admitting that the horse was fraudulently taken, we contend that there was not a shadow of uncontradicted proof pointing to Massey as the thief, or, if any, that it pointed more directly at Orgen, and that, if there were no privity or collusion shown between them, the state could not convict both. The charge did nothing more than to demand that the rule as to "reasonable doubt" be specially applied in this case to the question of identification of the real offender, and a close inspection of the facts will disclose that justice to the defendant required a specific charge on this point.

The second charge asked was: "If the defendant made false declarations to shield another, such declaration would not convict the defendant." The reason for this rule—as applied to a proper state of facts—is too patent for discussion. In *Porter* v. *The State*, 43 Texas, 367, Judge Devine says, speaking of the false statements of the defendant: "These misstatements and denials, whatever they may show or tend to prove as regards her truthfulness or a desire to avert suspicion from her family, are not in themselves evidence, direct or circumstantial, of her being guilty of the theft as charged."

Such deception, whether practiced by a wife to shield a husband, a brother to shield a brother, or friend to shield a friend, however culpable when measured by what is presumed to be a moral standard, emanates in fact from the nobler instincts of our nature—is in full accord with that "charity which is love," and is perchance a lingering ray of the divine fire within. If false representations were

made by the defendant, is it a violent presumption that they were made to shield Orgen and not himself? Do not the facts justify this conclusion?

The evidence in the case clearly raises a doubt as to the identity of the offender, and as to the object or purpose of Massey's declaration at Green's stable, and fully authorized the instruction asked. *Smithwick* v. *Andrews*, 24 Texas, 494; *Norwood* v. *Boone*, 21 Texas, 593.

5th. The court charged the jury: "If the defendant alleged that he traded for the horse from one Faulkner, and the proof shows he got him from one Westley Orgen, who was living at the same farm with him, it is a suspicious circumstance against him, that the jury may take into consideration."

The spirit and effect of this charge might have been heightened by an explanation as to the degree of suspicion arising from this supposed circumstance, and by some suggestion as to the legal effect of trading horses with a person "living at the same farm," and the weight of suspicion attaching to this circumstance.

The error here committed is sufficient to authorize a reversal of the judgment in this case, and an argument on other points would have been unnecessary, but for the reasonable probability of their discussion on another trial. In *Castleman* v. *Sherry*, 42 Texas, 61, the court say: "The charge is further objectionable, as being upon the weight of evidence, when the court tells the jury that evidence of the admissions of a party is regarded as dangerous and liable to abuse, etc. Such expressions as these, found in every treatise on evidence, are regarded as matters of argument rather than rules of evidence having the force of law upon which the court should instruct a jury," etc. See, also, *Walker* v. *The State*, 42 Texas, 360; *H. & T. C. R. R. Co.* v. *Terry*, 42 Texas, 451. It is error to instruct the jury that flight and fabrication of evidence are evidence of

guilt. *Sheffield* v. *The State*, 43 Texas, 378 ; *Bishop* v. *The State*, 43 Texas, 390 ; *Newman* v. *The State*, 43 Texas, 525 ; Pasc. Dig., Art. 1464.

*George McCormick*, Assistant Attorney General, for the State.

ECTOR, Presiding Judge. The defendant was indicted on the 29th day of April, 1873, for the theft of a gelding, the property of George W. Prather. He was convicted, and his punishment assessed at five years in the penitentiary. He made a motion for a new trial, which was overruled, and he has appealed to this court.

The evidence shows that Prather lost his horse some eighteen months or two years before the indictment was filed in this case. This horse was running on the range, some six miles from Waco, on the prairie between Prather's and Down's farm, at the time he was taken. He was never used as a work horse by Prather. He is described as a chestnut sorrel horse, about four years old. Defendant sold the horse claimed by Prather, late in the summer or early in the fall of 1872, to one Perry Green, in the city of Waco. Green was a livery-stable keeper ; his stable was on Austin street in the city of Waco. Prather lived in the same city. Green used the horse from the time he purchased him until the spring of 1873, when he was claimed by Prather. Soon after Prather claimed the horse, Green says that he went to Down's prairie farm and told the defendant that Prather had set up a claim to the horse ; that defendant said to him he would come into town on Saturday, or in a day or two, and see about it ; that defendant did come at the time promised, brought to witness another horse, took the horse described in the indictment and turned him over to Prather. This gelding was branded T 4.

Massey's defense, as shown by the record, is an effort on his part to prove that he purchased the gelding claimed by Prather from one Westley Orgen, and that he paid Orgen a valuable consideration for him. We believe about all the errors assigned are embraced in the motion for new trial, and we will notice them in their order.

It is insisted, 1st, that the court erred in refusing to permit Perry Green, a witness introduced by the state, to testify as to the statements of defendant to said Green when Green first notified defendant that Prather had claimed the horse. The counsel for the defendant, in his brief, takes the position that what was said by the defendant when he was first informed that Prather had claimed the horse is a part of the *res gestæ*, and admissible — that any explanation, especially if given instantly upon the property being discovered and the accusation brought home to the prisoner's knowledge, is admissible; and he cites us to Bishop on Cr. Pro. 746.

The section to which our attention has been called is as follows: "When stolen property is found upon one, or is in his possession, attention shall be given to his own explanation then made of how he came by it, and this explanation may be produced in evidence to the jury in his behalf, as well as against him. If the explanation is reasonable, and it is not shown by the prosecutor to be false, its weight in the scale for him will be very considerable; but if it appears unreasonable, and especially if it is shown to be false, it will bear against him very heavily. Such an explanation, especially if given instantly upon the property being claimed and the accusation brought home to the prisoner's knowledge, is deemed a part of the *res gestæ*."

The possession of property recently stolen by a defendant is a fact or circumstance which may be given in evidence by the prosecution against him; and, in some of the American

states, unexplained, is held as *prima facie* evidence of his guilt.   In Texas it is allowed to go to the jury, and it is to be considered by them, like the other evidence in the case, in determining their verdict as to the guilt or innocence of the prisoner ; and the defendant in whose possession the stolen property is found may give any explanation of his possession, which shall also be considered by the jury for the same purpose.

We have been referred to no authority which would extend the rule to the length claimed by the counsel for the defendant in this case.   We are not informed, by the bill of exceptions or otherwise, what his explanation was that his counsel was seeking to draw out.   This should be done in the bill of exceptions, to enable the court to decide upon its relevancy and materiality, when offered to explain how he came by the property.   In this instance the court, on cross-examination, ought to have allowed Green to tell the reply of the defendant to him, as to how defendant said he came in possession of the horse, at the time that Green first informed defendant that Prather had set up a claim to the horse described in the indictment ; because the state had introduced a part of the conversation, and a part of what the defendant said, and defendant was entitled to the balance of it.

We believe that the court erred in excluding from the jury the duly authenticated certificates of the county clerk of McLennan county, showing that three different parties, to wit, John Cox, Charles Harris, and Westley Orgen, had placed on record T 4 as their brand previous to July, 1872. The fact that three different persons had recorded and used the T 4 brand, and that Westley Orgen was one of them, ought to have been allowed to have gone to the jury, there being evidence already before the jury that defendent bought the horse from Orgen, and it being also in evidence that the T 4 brand was plainly discernible on the animal claimed by

Prather, and there was no evidence whatever tending to· show that defendant had placed it there. We cannot tell what effect this testimony would have had on the jury.. The open manner in which defendant used the gelding in the immediate neighborhood where Prather's gelding ran,. the length of time which had elapsed after the animal was missing, and his age, in connection with this brand, might. at least have created a reasonable doubt of defendant's. guilt in the minds of the jury.

We do not think that the court erred in refusing to give· the instructions asked by the defendant's counsel. If the: court had charged the law correctly on the subject of a. " reasonable doubt," it would have given the defendant the· full benefit of all he was entitled to on this point.

The 4th ground for a new trial is that the court erred in: the charge to the jury in failing to explain what is a reasonable doubt. The term " a reasonable doubt" is pretty well understood by every man of common sense. It would be: difficult to use words better understood, and to define their meaning better than those words do themselves. Instead of attempting to explain what " a reasonable doubt " is,. we would recommend all judges, in their charges on this point, to follow the exact words used in Article 3105, Pas- chal's Digest, and not attempt any further explanation.

In this case the court instructed the jury that, " if you have a reasonable doubt as to defendant's guilt, he is entitled to an acquittal; but it must be a reasonable doubt arising from and growing out of the evidence before you, and not an unreasonable doubt not growing out of the evidence." A reasonable doubt, such as would entitle the defendant to an acquittal, need not necessarily arise out of the testimony; it may be the result of a want of testimony sufficient to satisfy the mind.

As the case will be reversed on other grounds, we will notice the 5th ground of error set out in motion for new trial.

When the court charged the jury that, "if the defendant alleged that he traded for the horse from one Faulkner, and the proof shows he got him from Westley Orgen, who was living at the same farm with him, it is a suspicious circumstance against him that the jury may take into consideration," such charge is objectionable as being on the weight of the evidence. Such expressions are found in every treatise on evidence. They are to be regarded "as matters of argument rather than rules of evidence having the force of law upon which a court should instruct a jury. The jury should be left free to make up their verdict, judging for themselves of the credibility of the witnesses and of the weight to be given to the evidence, under the instructions given by the court declaring the law applicable to the case, the verdict being subject to the action of the court on a motion for new trial." *Castleman* v. *Sherry*, 42 Texas, 61; *Brown* v. *The State*, 23 Texas, 195.

It is not proper for the court to instruct the jury as to the weight to be given to presumptions, as being strong, probable, or light; these are matters to be left entirely to the jury, uninfluenced by the charge. The line which separates the province of the judge from that of the jury must be carefully observed. To the jury, under the law, is committed the right to exercise their independent and unbiased judgment in determining upon the facts. When the judge confines himself to his duty of setting forth the law applicable to the case, without expressing or intimating any opinion as to the weight of the evidence, the effects of statements made by the accused, or by the witnesses, such a charge is unexceptionable. Knowing how difficult it is for judges, in the press of business and the confusion incident to hotly-contested trials, to keep strictly within their legitimate limits, we would impress upon them the importance of exercising great caution in so framing their instructions as not to charge upon the weight of the evidence.

The judgment of the district court is reversed and the cause remanded.

*Reversed and remanded.*